IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, | Case No. CV-04-443-E-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| DAVID ROSENKRANCE, Field Manager, Challis Field Office, Bureau of Land Management and BUREAU OF LAND MANAGEMENT, | |
| Defendants. | |

## INTRODUCTION

The Court has before it a motion for reconsideration filed by Intervenors, and a motion for injunctive relief filed by WWP. The Court took testimony and heard argument on August 26, 2005, and allowed the parties to file additional briefs that were received on September 9, 2005. After reviewing all these material, the Court has decided to (1) deny the motion to reconsider, and (2) issue an injunction along the lines proposed by the BLM and Intervenor L&W Stone. This decision is explained below.

**Memorandum Decision and Order - 1**

## ANALYSIS

1. **Motion to Reconsider**

L&W argues that "[t]he Court's decision in requiring an EIS on the basis that there was inadequate public comment on the EA prior to its issuance . . . is substantially unjust." *See L&W Brief at p. 9.* The Court did find that the EA was insufficient due to a lack of public comment. However, the Court then went on to hold that an EIS was required because the record raised substantial questions about whether the project was significant. The Court held that the BLM acted in an arbitrary and capricious manner in failing to prepare an EIS in light of the substantial questions identified by the Court. That holding had nothing to do with the lack of public comment, and is not challenged by the Intervenors. Consequently, even if this Court were to strike its discussion on the lack of public comment, the BLM would still need to prepare an EIS.

With regard to the public comment issue, the Intervenors assert that the BLM did receive extensive public comments on the Amended Plan of Operations (APOO). The Court agrees, and pointed out in its decision that the BLM held a public meeting on the APOO in February of 2003. *See Memorandum Decision* at pp. 4, 7.

There were, however, two other alternatives being considered by the BLM in

addition to the APOO – the two alternatives proposed by the BLM.  Those two alternatives, one of which was the BLM's "preferred alternative," were never submitted to the public for comment.

The regulations and Ninth Circuit case law governing the public comment issue were discussed at length in the Court's earlier decision, *id*. at p. 7, and that discussion will not be repeated here.  The Intervenors are correct that these authorities do not create a bright-line test for determining the precise amount of public comment required in each case.  However, the clear tenor of the Ninth Circuit case law is that public involvement is crucial; the regulations require the agency to involve the public "to the extent practicable in preparing [EAs]."  40 C.F.R. § 1501.4(b).

The BLM made no showing in this case that it was impractical to obtain public input on these alternatives.  The result was that two-thirds of the alternatives being considered by the BLM were never submitted to the public for review.

The apparent practicality of submitting all alternatives to the public, in combination with two unique circumstances, make a compelling case for requiring public review.  The first unique circumstance is the sensitive nature of the area, given that it includes an Area of Critical Environmental Concern, a Class II Visual Resource Management Area, and an adjacent river under consideration to be

**Memorandum Decision and Order - 3**

designated as a Wild and Scenic River.  Second, there are substantial questions concerning past expansions of the site that may have been outside of approved plans of operation.  These factors warranted greater public scrutiny.  The BLM's failure to submit a draft of the EA for public review and comment was arbitrary and capricious, and the motion for reconsideration must therefore be denied.

2. **Injunction**

In its earlier decision, the Court found that the BLM violated NEPA by failing to prepare an EIS.  The Court found that while an injunction does not automatically issue upon a finding of a NEPA violation, "the presence of strong NEPA claims gives rise to more liberal standards for granting an injunction." *High Sierra Hikers Assoc. v. Blackwell,* 390 F.3d 630, 641 (9th Cir. 2004).  If environmental injury is sufficiently likely, the balance of harms will usually favor the issuance of an injunction to protect the environment.  *Id*.

Here, environmental injury is sufficiently likely.  This likelihood was identified in the Court's finding that the project would expand "the Quarry to 166 acres on an exposed ridge for 40 years without clear reclamation requirements in an area where scenic values are protected . . . ." *See Memorandum Decision* at p. 14.  Because this environmental injury is sufficiently likely, the balance of harms, under the *High Sierra* analysis, favors the issuance of an injunction.

**Memorandum Decision and Order - 4**

While Intervenors would suffer a great hardship if their operations were totally enjoined, the Court does not intend to impose that remedy, and thus the balance of hardships favors WWP.

These findings dictate that an injunction issue. Less clear, however, is how far that injunction should reach. The Court put this issue to the parties, but they were unable to reach an agreement. The Court must therefore make the call.

The EIS process will take from one to two years, although the parties estimate that it could take up to three years at the very longest. During that time, both sides agree that L&W Stone should be allowed to continue mining. Their disagreement is over the scope of the mining that should be permitted.

More specifically, L&W Stone seeks to layback the highwall by 30 feet per year, while WWP seeks to limit the layback to 15 feet per year. L&W Stone makes a persuasive case that WWP's proposal for a limited layback would result in serious financial harm to L&W Stone, and the loss of many jobs. This in turn would adversely affect the nearby town of Challis, according to the testimony of Mayor Janette Burstedt-Piva.

The additional mining under L&W Stone's proposal would disturb only about two acres of land, *see Transcript of Hearing* at pp. 32-33, and is approved by the BLM. *See BLM Post-Hearing Memorandum.* The BLM's Jeff Christenson is

**Memorandum Decision and Order - 5**

responsible for assessing the visual impact of mining projects.  He testified that to make that assessment, he chooses Key Observation Points (KOPs) "based on where people are going to be seeing [the project]."  *See Transcript of Hearing* at p. 244.  Based on his estimates of what the project would look like under both proposals from two different KOPs, Christenson testified that there was very little difference between the two proposals: "You can't tell any real significant difference between 45 feet or 50 feet [WWP's proposal] or 100 feet [L&W Stone's proposal].  It's very similar looking . . . ."  *Id*. at p. 249.

      The testimony shows that the environmental impact of an additional 15 feet of layback under L&W Stone's proposal would be minimal, while the financial impact of enjoining that mining would be substantial.  Given the additional factor that the BLM approves the additional 15 feet of layback, the Court will approve L&W Stone's proposal for allowing up to 30 feet of highwall layback per year until the EIS is completed.

      The second area of disagreement concerns whether mining will be permitted in Pit 2.  WWP proposes to enjoin all mining in Pit 2, while L&W Stone proposes to mine Pit 2 by digging downward 15 feet per year, causing the mine to widen 15 feet per year.  Thus, at the end of three years, Pit 2 would be 45 feet deeper, and 45 feet wider, under L&W Stone's proposal.

**Memorandum Decision and Order - 6**

According to the testimony of mining engineer Eric Klepfer, Pit 2 sits in a "topographic bowl, or a hole" and is therefore "hidden from the primary visual shed and where people drive up the road." *See Transcript of Hearing* at p. 20. The mining of Pit 2 will allow L&W Stone to maintain full employment and will not limit any alternatives that the BLM could consider in the EIS. *Id*. at p. 40. Given these facts, and the minimum disturbance of the land, the Court approves L&W Stone's proposal to mine Pit 2 by going down 15 feet per year and out 15 feet per year.

The final area of disagreement is over whether any mining should occur in the Area of Critical Environmental Concern (ACEC). The ACEC is defined in FLPMA as an area "within the public lands where special management attention is required . . . to protect and prevent irreparable damage to important historic, cultural, or scenic values . . . ." *See* 43 U.S.C. §1702(a).

The ACEC area in this case is about 78 acres in size. *See Transcript of Hearing* at p. 228. Robert DeTar, the BLM's Senior Geologist, testified that the critical area of the ACEC is along the "bench," which contains "pristine plant communities that, because of the topography, because of the river, have not been, historically, grazed; therefore the plant communities are pristine." *Id*. at p. 216. This bench area runs along the East Fork of the Salmon River. Just above the

bench, the land slopes sharply upward toward a ridge that forms the east and north boundary of the ACEC. The pristine plant communities do not continue up these cliffs. *Id*. at p. 230.

L&W Stone mining operations currently encroach into about 4 acres of the ACEC near its north boundary. According to DeTar's testimony, there are no pristine plant communities in or near this area. *Id*. L&W Stone proposes to continue digging downward in this 4 acre area but not to expand outward in any way. *Id*. at 81-82. The BLM approves this proposal because it will not have any effect on the critical areas of the ACEC, located on the bench. The Court agrees, and will therefore approve L&W Stone's proposal on this issue.

### 3. Conclusion

There is substantial evidence that L&W Stone has expanded this site over the years without approval from the BLM. This history is especially troubling because the mine is located in an environmentally sensitive area. It appears now, however, that L&W Stone is working closely with the BLM to produce a plan to govern mining while the BLM completes an EIS.

That interim plan restricts mining so that the footprint of the mine will only be minimally increased, while at the same time the reclamation process will be speeded up . While the Court continues to be concerned about the extent of the

**Memorandum Decision and Order - 8**

mining, the BLM's approval of this interim plan gives the Court confidence that it will fully protect the environment.

The Court shall therefore issue an injunction as proposed by L&W Stone and the BLM. The Court will also require that L&W Stone permit representatives from BLM and WWP to inspect the mine premises on a regular basis to monitor compliance with the terms of the injunction.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to reconsider (Docket No. 66) is DENIED.

IT IS FURTHER ORDERED, that the motion for injunction (docket no. 72) and motion for relief (Docket No. 70) are GRANTED IN PART AND DENIED IN PART. They are granted to the following extent: Intervenor L&W Stone is hereby enjoined from operating its mine in any manner which is inconsistent with the following restrictions: (1) The reclamation and restoration described in L&W Stone's Interim Mining Plan shall be fully implemented as scheduled therein; (2) Layback of the highwall shall not be greater than 30 feet per year (with the "year" beginning with the date of this decision); (3) Mining in Pit 2 shall not be greater than 15 feet per year downward and 15 feet per year outward; (4) Land disturbance

of any type in the ACEC shall be restricted to the 4 acres that are currently disturbed ; and (5) No expansion of mining shall be permitted except those expansions expressly allowed in the restrictions listed above.  The motions are denied in all other respects.

    IT IS FURTHER ORDERED, that this injunction shall go into effect immediately and will continue in effect until further order of this Court.  The Court shall review the injunction after the EIS is issued in final form.

    IT IS FURTHER ORDERED, that as a condition of allowing further mining, L&W Stone must allow BLM and WWP representatives to inspect its premises on a regular basis at times convenient to all.

    IT IS FURTHER ORDERED, that the Court will maintain continuing jurisdiction over this case to enforce the terms of the injunction.

DATED:  **September 27, 2005**

B. LYNN WINMILL  
Chief Judge  
United States District Court

**Memorandum Decision and Order - 10**